The next case today is Joseph Modeski et al. v. Summit Retail Solutions, Inc. Appeal number 20-1746. Attorney Davis, please go ahead and introduce yourself on the record. May I appease the court? Good morning. Benjamin Davis from the Law Offices of Peter T. Nichol. I represent all appellants in this matter, and I also respectfully request three minutes of because the appellants, who are all brand representatives, never sold anything. Because of that, it is crystal clear that the district court ruled in error when it ruled that they were subject to the outside sales exemption. The outside sales exemption requires that an employee's primary duties be making sales. However, brand representatives never sold anything. They were purely promotional workers. Summit is a retail employee, and based on that, Summit had brand representatives in the retail stores for the sole purpose of promoting their products. While at their display stations, all they did was hand out samples. While at their display stations, all they did was show customers products. While at their display stations, they never took any form of currency. Any form of currency meaning any sales contracts, never exchanged cash, never processed any credit card, never procured any sales agreement, never did anything that even signified what the legal definition of sales. Based on that, it is clear that the district court ruled in error. In order to constitute a sale, it must be an exchange, a contract to sell, a cosignment for sale, or a shipment for sale, or an other disposition. Mr. Davis, if per chance we thought that your clients obtained the maximum commitment possible that each customer would purchase the product and therefore fell within the definition of a salesperson, what I've been struggling with is what to do with the allegations that there was deceit in the whole... Good morning again, Benjamin Davis on behalf of all appellants. Now, I believe the court had a question. Yes, Scott Thompson did. Go ahead. I've been trying to figure out what to do with the allegations in the complaint that the summit managers directed your clients to under-report their work hours and that impacted the whole compensation process when the true-ups were done. Yes, and based on that, I believe your first question was whether or not they retained the maximum commitment under the law. And as to your second question, they were definitely asked to under-report their hours. A part of Summit's ledger system, it was all based on whether or not their hourly wages during a specific period was higher than their commissioned payments. In order to avoid a negative ledger balance, which would lead to termination and other repercussions, Summit's managers explicitly told brand reps to under-report their hours. Because of that, they were not... But how does that direction impact the analysis of whether they were or were not salespeople? That impacts the analysis by looking at the clear indications of what the indicia of a salesman is. Keep in mind that the Sixth Circuit recently, a month after Judge Saylor entered his appearance in court, paid very close attention to the indicia of a salesman, and that was based on the fact whether or not they can control their commissions, whether or not they can control their hours, and how much supervision that they actually had. Because in the herd, just like this matter, the brand reps were also paid very low wages, they had no control of their commission earnings, they could not choose the products that they wanted to promote, and they also were heavily supervised. And part of that supervision was based on the fact that they were illegally asked to under-report their hours. Based on all that, we look at the very indicia of what the very purpose of the outside sales exemption is. And the very purpose of the outside sales exemption is based on the premise of workers making high salaries and are not subject to hourly pay conditions. Keep in mind that the solicitors in flood was paid approximately $70,000 a year and was awarded with incentives like travel around the world. Keep in mind that in Christopher, both of the sales pharmaceutical representatives also made $70,000. Therefore, when the 6th Circuit in Hurt compared that to both Christopher and flood, it was made clear that those sales representatives in Christopher and flood were not the type of employees under the outside sales exemption that the court was designed to protect. Counsel, if I might, let me just, I guess, tell you what is bothering me a bit about your position. It seems to me that the only thing left to be done in order to consummate a sale, after your clients did all that they were trying to do in order to get a sale, and the sale would not be some later event. It was going to happen then and there in the store. I mean, that was their objective. They were trying to sell their products then and there. They were trying to get the customers to put the item in the cart so that it could then be taken to the cash register. The only thing that remained to be done was what I would describe as a kind of ministerial act in which the cashier would then cash out that particular item. There was nothing left to be done to consummate the sale. It seems to me, and the Supreme Court suggests, we're not supposed to get distracted by technicalities, is how I think the court puts it. It seems to me that the checking out by the cashier was a mere technicality, that everything that was done before that wasn't just promotional. It was an attempt to consummate a sale. When the customer puts the item in the cart, that's a commitment to purchase. They have, your clients have succeeded in doing what they are supposed to do, and again, all that remains to be done is to have that perfunctory cashing out. That's what gives me pause about accepting your position. How do you address that concern, if you would, please? Your Honor, with utmost respect, there should be absolutely no pause. The Sixth Circuit's recent opinion in Hurt makes that clear. Keep in mind, purely inducing and trying to get application is not making sales. In Hurt, it made clear that finalizing the sales transaction is a primary component of whether or not someone is actually making a sale. In Hurt, there was so much more that had to happen before a sale would take place. I don't know that, in that sense, that Hurt is remotely like this case. I don't know how Hurt actually helps you in making the case that you're trying to make. Just very briefly with Hurt. Time has expired. Answer the question, please. In Christopher, the other disposition sales were specific to the maximum possible commitment in the pharmaceutical industry that they could get for the products. Buford and in the Eighth Circuit and the Sixth Circuit and Killian make clear that the other disposition analysis does not apply to retail because they could not obtain the maximum commitment possible. Both of those courts make clear that finalizing the sales transaction is not a mere technicality. Thank you, counsel. You have your time reserved. Are there any further questions at this point? No. Thank you. Thank you, Your Honor. Thank you, Mr. Davis. Please mute your device at this time. Attorney Miller, if you could please unmute your device and introduce yourself on the record. Good morning, Your Honors. Barry Miller of Seifarth Shaw for Defendant Appalee Summit Retail Solutions. If the Court has no questions for me off the top, I think I'm going to change the order in which I was going to present and address a few things that Judge Thompson and Mr. Davis just discussed. The first is Judge Thompson's question about what we do with these allegations in the complaint that brand representatives were instructed to underreport their time. And I think we do exactly what Judge Saylor did, which is disregard them. Those allegations, if they had any import at all, might be the basis for some sort of state law contract claim or perhaps a state law wage claim of another variety whereby the plaintiffs might say, you agreed to pay me hourly plus commission, but you didn't do that because of the way you supervised me. You've breached the contract or you owe me wages under a state wage statute. That's the sort of claim to which those allegations, which, by the way, there's no evidentiary support for after discovery. There's no mention of that in the record. But that's the sort of claim that could proceed from those allegations. Nothing under federal law and no claim that Mr. Davis has elected to bring on behalf of those people. And so by operation of the doctrine of bar and merger and the rule against claim splitting, that issue is off the table. They can't bring a breach of contract action. And so the only question is whether these people were making sales. And if they were, there is simply no liability on the I think that's the proper approach to that. I think that Mr. Davis is what what what what was the purpose of setting up a model that didn't allow the sales folks to directly receive compensation for the purchase? They did. They received. I don't mean I don't mean their commissions. I mean, why didn't they do the actual sales transaction? The reason for that is disclosed in the record. It's a structural problem. You have someone standing at the back of the store where you have ten thousand skews, for example, ten thousand different items that could be purchased at a Costco. And it is not only impractical, but impossible to follow someone around with some sort of cash register device and keep track of the items that they've elected to purchase by putting them in their cart and do that item by item by item along the way. Instead, the way that this stream of commerce works, and that's what Christopher tells us to look at this industrial and commercial context, the way that sales work in any retail store is that a customer selects their items and puts them in their cart, signifying an intention to buy them. And then everything is so are you saying are you saying it would have been too difficult for Costco? Yes, for the overall arrangement to be the point of sale. It would have been too difficult for Summit to process transactions at the brand reps booth, and it would not have been consistent with your Costco or your BJ's or your host stores larger operations. It creates a massive inventory control and theft issue. Your opponent says that that focus is all wrong. You're talking about a particular business model that Summit chose to pursue as a way of accommodating the concerns of its clients. And then under Christopher, the focus is not supposed to be on a particular business model. It's supposed to be on the industry as a whole. And here the industry as a whole is the retail industry. And in that industry, a sale takes place at the cash register when a sale is consummated. So are you being consistent with Christopher when you talk about this specific business model as opposed to the industry that we're supposed to consider the retail industry? Yes, absolutely, your honor. This is the way that sales work in the retail industry. In a retail store, you always take all of your products up to the front of the store for the cashier to check you out. And in the 21st century, maybe you go into an Amazon store, and that's not even part of the process because the technology can tell what you've elected to buy when you put the item in your cart. And what the Supreme Court has said about that is what your honor said to Mr. Davis. That processing of the transaction is not the heart of the sale. That processing of the transaction is the mere technicality in the retail context that the those technicalities, the specific rejection of what I will call the cash register rule that Mr. Davis posits that a sale occurs only at the cash register has been rejected over and over, including in the cases that Mr. Davis cites. The import of cases like Beaufort and Killian is not that the individuals at issue didn't run the cash register. In fact, in Killian, they did. The individuals at issue, based on an ongoing stream of commerce, reordered products on a device that processed the transaction. And that was the only processing to be done. And five minutes remaining. The reason that those people were not salespeople is because they weren't interacting with the customers. They weren't persuading people and influencing decisions to buy. And that's what making a sale is. It's the persuasive activity that goes along with an individual customer who's standing in front of you to purchase a product that they weren't inclined to purchase or to purchase more of it than they were otherwise inclined to purchase. Well, counsel, I think I would accept your proposition that what was going on here prior to the transaction of the cash register could be viewed as all about sales. Yet we have in this area of the law this concept of promotion, which is something that takes place prior a sale. Everything that they were doing was an attempt to promote a sale, which would not be finalized until the transaction at the cash register. So under the regulations, why doesn't this, what they were doing prior to the sale, why doesn't that fall within the definition of promotion that takes place prior to the sales? The regulations answer that question, Your Honor, and they do that in the way that they treat promotion. Promotion is a recognized form of abstract persuasive activity that's broadcast to a large group of people that the person engaged in promotion is not going to individually converse with an attempt to convince the product, convince the customer to purchase the product rather. But the way that the regs deal with the is to look not at whether people were doing promotional activity. It's to look at whether they were doing promotional activity that was in furtherance of their own sales or in furtherance of sales made by somebody else. There is no basis in this record for the conclusion that the promotional activity that people engaged in here was to increase the sales volume of anyone other than the brand rep standing right there. Promotional activity that would disqualify someone from the sales activity is, for example, what you see in Beaufort, where someone goes out and instructs not the end purchaser, but the store employee who will interact with the end purchaser and helps them facilitate sales to the end customer. That first communication between the employee of the LG merchandising store and the store employee is promotion. When the store employee talks to the TV, that's making sales. That's why whatever you want to call the activity in which these people engaged, they are the only link in the chain. As your honor points out, there's no one else that they are promoting sales on behalf of. Christopher emphasizes that the detailers there were making quite a bit of money. They were $70,000 plus. That issue, the level of compensation of those who are to be considered as involved in sales or something else, the amount of money they make is taken into consideration. How should we factor that here? The plaintiffs here were making a very into the decision as to whether they fall within the exception. Your honor, I respectfully would say that's just not a factor. It's nowhere in the statute. It's nowhere in any interpreting regs. It doesn't show up in any case law whatsoever until quite a bit of doctrine around this has already developed. I think it's a fundamental precept of administrative law, which is what we're dealing with here, that no agency and certainly no court is allowed to into a statute that doesn't contain them. Why did it seem to factor into the Christopher decision? I think it was a way. It certainly has attracted a lot of attention in the lower courts, but I think Judge Murphy and his dissent in Hurt got this right. What the Supreme Court was doing is just emphasizing the common sense force of the conclusion that these people were engaged in sales and that only by resort to a technicality could you overcome that common sense force. It's sort of an illustration, but it can't be used. These factors, which don't appear in the statute, can't be used to push someone out of an exemption that's written into a statute. Judge Murphy suggests they just help us understand why somebody who's on the bubble is well within this common sense zone of sales. I think the dispositive testimony on that comes from the plaintiffs themselves. Time has expired. Answer the question. Thank you, Your Honor. Mr. Davis began by saying over and over that these people didn't sell anything, and that's simply contrary to their deposition testimony. Several of them described themselves as salesmen, their own words, and when my colleague asked Mr. Wolfert, for example, if he could think of another word in the English language, another verb in the English language that described what he was doing other than sales, he thought about it for a second and he said no, and all of the plaintiffs testified similarly. While Mr. Davis believes that they weren't engaged in sales, no one else believes that, including the plaintiffs, and that's why Judge Judge Lynch. May I just ask one question, Judge Lynch? Yes. Thank you. The Supreme Court also talked about an external indicia of whether somebody is or is not involved in sales, and there seems to be some debate in the cases as to whether, even though the Supreme Court seemed to factor it into their decision, whether those are appropriate factors to bring to the analysis, and you seem to suggest that they're not. I'm puzzled by that. If the Supreme Court says they're relevant, it seems to me they are relevant. Why do you dismiss, in fact, they probably help you in this case, not hurt you, this notion of the extra indicia? I fully agree with that, Your Honor. The indicia help us. There's no question that these people were salespeople. They were paid commissions. They were out in the field with line-of-sight supervision to no one. They were hired for their sales experience and trained in how to do that. The indicia are certainly present. My position is just that we don't need them, and the Supreme Court in Christopher didn't actually say they were relevant. They just said we're convinced that these people, in any vernacular or common-sense way, are salespeople, and one reason that that common-sense conclusion is so strong is these indicia. Here, we don't need it. We don't need to stretch to fit the outside sales exemption. Plaintiffs need to stretch to get out from under it, and frankly, they can't. So, the indicia, I think, frankly, serve no role in the Court's adjudication of this matter. Okay. Thank you. Any further questions from the panel? No. Thank you. Mr. Davis, go ahead. Benjamin Davis, again, on behalf of all plaintiffs' matter, the appellee's arguments are completely misleading and completely misconclude Christopher. The fact that brand representatives could not consummate the sale was not in all the technicality. In Christopher, in the pharmaceutical sales industry, the maximum commitment possible they could obtain was a commitment from the physician to prescribe their drugs in the future. The reason is because it was illegal for the sales representatives to sell drugs directly to consumers without first obtaining a prescription. Now, comparing this to the matter of Killian, where the Killian made clear that the other disposition analysis does not apply to the retail industry. The same thing was stated in Buford. They said that the other disposition analysis does not apply to the retail industry because it does not involve non-binding commitments or other disposition sales. In this matter, appellants also state clearly on the record that they were doing nothing other than promotion work. How could it possibly be concluded that they were making sales? Once they showed a product to someone at their display station, they had absolutely no idea what that untraceable and unidentifiable customer did with the product. A part of their inventory task at the end of their day consisted of going around the whole retail stores and looking for where they stashed their products. All the appellants testified that their products were not linked to any at all individual sales. One of them said that 97 percent of the time I was not making sales because I had no idea what the customer was going to do with the product after the time they took it away. Isn't there a concept at work in this area about whether the individual who was involved in the sales effort obtained a commitment to the purchase? The only commitment that could be obtained under the circumstances. They could not actually do the cash out. That wasn't the business model here. But they did everything they could do to obtain a commitment from the customer short of the actual transactions. Doesn't that suggest that they did accomplish all they could do to achieve a sale then reflected in the decision of the customer to put the item in the cart? At that point, they had obtained a commitment to a sale. Now, maybe the individual would change his or her mind on the way to the cash register. But when that happened, when the item was put in the cart, they had obtained a commitment to a sale. Isn't that the important concept in this area? Your Honor, most respectfully, brand representatives never obtained any form of commitment because they were only doing promotion work. And a person placing an item in their cart does not present the legal definition of a commitment. Okay. Thank you, Mr. Davis. Are there any further questions from the panel? No, thank you. Okay. Thank you. Thank you, Your Honors.